# United States Court of Appeals
## For the First Circuit

No. 07-2753

ROSALIND HERMAN, Individually and as Trustee of
FINANCIAL RESOURCES NETWORK, INC.
401(k) Profit Sharing Plan; GREGG D. CAPLITZ;
FINANCIAL RESOURCES NETWORK, INC.,

Plaintiffs, Appellants,

v.

RUDY K. MEISELMAN, Individually and as Trustee of the
Rudy K. Meiselman Revocable Trust; HOPE E. MEISELMAN,
Individually and as Trustee of the Laura Jane Meiselman Trust,
Paula Sue Meiselman Trust and Trust of Laura, Janet and Paula
Meiselman; LAURA PATTERSON; JANET MEISELMAN, Individually and
as General Partner of Meiselman Life Insurance Limited
Partnership; PAULA SUE MEISELMAN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Robert D. Cohan, with whom Cohan Rasnick Myerson LLP was on brief, for appellants.
Charles P. Kazarian, P.C., with whom Law Office of Charles P. Kazarian was on brief, for appellees.

September 10, 2008

**HOWARD**, **Circuit Judge**. Appellants Rosalind Herman, Gregg Caplitz and Financial Resources Network, Inc. ("FRNI") filed suit in Massachusetts state court against appellees Rudy K. Meiselman and various members of his family. The suit stemmed from Meiselman's employment with FRNI and his participation in a profit-sharing plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). Meiselman removed the matter to federal court and moved to dismiss on the ground that a 2005 judgment by the district court against appellants and in favor of Meiselman barred the current action. The district court agreed and dismissed on claim preclusion grounds. We affirm.

## I.

This is the latest installment of a dispute that has oft darkened our doorstep.[1] We take appellants' allegations as true for purposes of reviewing the Rule 12(b)(6) motion to dismiss.

Meiselman, a retired doctor, became employed by FRNI in late 2001 to provide investment strategy services. FRNI set up an investment plan (the FRNI Plan) so that Meiselman could roll his accumulated funds over from a previous employer's profit-sharing plan free from negative tax consequences. Herman, who was President, Secretary and a Director of FRNI during the relevant

---

[1]Indianapolis Life Ins. Co. v. Herman, 204 Fed. App'x 908, 910 (1st Cir. 2006) (per curiam); Indianapolis Life Ins. Co. v. Herman, 516 F.3d 5, 11 (1st Cir. 2008).

-2-

time, was also the FRNI Plan Trustee. Caplitz provided financial planning services to FRNI as an independent contractor.

By 2003, the parties began to disagree on certain investment and management decisions surrounding the FRNI Plan. In 2004, Meiselman sued Herman, Caplitz and the FRNI Plan in federal court in Massachusetts (the "First Action"), claiming breach of contract and breach of fiduciary duty in violation of ERISA and seeking to compel the release of his funds from the Plan account. That suit was dismissed by the district court after the filing of a Stipulation of Dismissal under Fed. R. Civ. P. 41(a) and execution of a Settlement Agreement, as well as Meiselman's execution of a Release, purporting to relinquish any and all claims arising out of the employment relationship.[2]

The saga was far from over. In late 2004, the Indianapolis Life Insurance Company ("Indianapolis Life") brought suit in U.S. District Court for the District of Massachusetts (the "Second Action"). The suit sought rescission of a life insurance policy issued to FRNI insuring Meiselman and his spouse and a determination of Indianapolis Life's rights and obligations under

---

[2]While Meiselman has maintained that certain preconditions to the Rule 41 dismissal were allegedly not performed, Herman and Caplitz say that those conditions were not part of the Release or Settlement Agreement executed by the parties. In any event, the dismissal was filed with and accepted by the district court.

the policy.[3] The suit named as defendants Herman, Caplitz (who had acted as agent when the policy issued), the FRNI Plan and Meiselman and his spouse. In response, Meiselman cross-claimed against his co-defendants Herman, Caplitz and FRNI (as administrator of the FRNI Plan). In the cross-claim, Meiselman sought a declaratory judgment that the 2004 Release was void under ERISA, 29 U.S.C. § 1110(a), and also alleged several state law claims including breach of employment contract, breach of fiduciary duty, breach of contract and conversion. The state law claims were accompanied by demands for money damages.

Herman, Caplitz and FRNI, the cross-claim defendants, failed to respond to the cross-claim. A notice of default was entered in Meiselman's favor under Fed. R. Civ. P. 55(a), and thereafter the district court entered a default judgment against Herman, Caplitz and FRNI jointly and severally in the amount of $938,640.[4]

---

[3]At issue in the suit were alleged misrepresentations concerning Meiselman's health, whether Caplitz had made sure that the Meiselmans' finances had been reviewed by a certified public accountant, and whether the Meiselmans had sought to rescind the policy. The suit also sought restitution of the commission paid to Caplitz in the course of his conduct as an agent for Indianapolis Life.

[4]Herman, Caplitz and FRNI sought relief from the default judgment, alleging excusable neglect by their then-counsel. The district court denied relief, and also entered summary judgment against all of the defendants in favor of Indianapolis Life on intentional misrepresentation grounds. Indianapolis Life Ins. Co. v. Herman, No. 04-12481 (D. Mass. Jan. 27, 2006) (order granting summary judgment), aff'd, 204 Fed. App'x at 910. Appellants have filed a

The present episode of this litigation was commenced the following year when appellants Herman, Caplitz and FRNI filed suit in Massachusetts state court against Meiselman and members of his family, alleging state law claims of breach of contract, fraud, negligent misrepresentation, negligence, negligent and intentional infliction of emotional distress and unfair and deceptive business practices. The complaint concerns acts in connection with the employment relationship, the administration of the FRNI Plan, the Release and Settlement Agreement and a specific harassing statement allegedly made by Meiselman. Meiselman removed the matter to the district court and moved to dismiss. He argued that the default judgment against appellants in the Second Action served to bar suit under the doctrine of claim preclusion. The district court agreed and dismissed the claim, prompting this appeal.

**II.**

We review the granting of a motion to dismiss de novo. Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 5 (1st Cir. 2006).

Appellants have raised a plethora of issues, although their ability to withstand a motion to dismiss hinges upon only one: is their action barred by claim preclusion?[5]

---

malpractice action against their former counsel.

[5]Appellants point to Kaspar Wire Works, Inc. v. Leco Eng'g & Mach. Inc., 575 F.2d 530, 537 (5th Cir. 1978) and Arizona v. California, 530 U.S. 392, 414 (2000) to argue that claim preclusion does not

-5-

We consider the following factors in determining whether the judgment is given claim preclusive effect:  the finality of the judgment, the identity of the parties and the identity of the causes of action.[6]  In re Iannochino, 242 F.3d 36, 43 (1st Cir. 2001).  Finality of the judgment is satisfied by the issuance of a default judgment.  See SMA Life Assur. Co. v. Sánchez-Pica, 960 F.2d 274, 275 (1st Cir. 1992); see also Acevedo-Villalobos v. Hernández, 22 F.3d 384, 388 (1st Cir. 1994) (dismissal has claim preclusive effect where it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368,

operate in the declaratory judgment context, and that they should prevail under issue preclusion principles.  These two cases concern consent decrees, however, in which a court does not make a specific declaration but rather endorses an agreement reached by the parties.  See Carteret Sav. & Loan Ass'n., F.A. v. Jackson, 812 F.2d 36, 38 (1st Cir. 1987) (distinguishing consent decrees from declarations of a court).  In this case, on January 27, 2006, the district court actually entered a comprehensive judgment resolving all claims in the Second Action, including an award of money damages from the cross-claim defendants to Meiselman.  Thus we will not address the appellants' arguments that issue preclusion should operate instead of claim preclusion.

[6]Lurking in this case is an interesting question about whether the claim preclusion law of the forum state plays a role in deciding the federal common law question of whether the new complaint by appellants is barred.  See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507-08 (2001); see also Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008).  Because both Massachusetts law and federal common law apply the same analytical factors in deciding claim preclusion questions, we needn't decide this issue.  See, e.g., TLT Const. Corp. v. A. Anthony Tappe & Assocs., Inc., 716 N.E.2d 1044, 1049 (Mass. App. Ct. 1999).

373-74 (1981))).  The requirement of identity of the parties also is easily met here.[7]

Thus we need focus only on whether the appellants' current claims are sufficiently identical to the claims at issue in the Second Action to bar them.  To do so, we inquire as to whether a claim arose from the same "transaction, or series of connected transactions, out of which the [prior] action arose."  Restatement (Second) of Judgments § 24; see also Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 9 (1st Cir. 2008).  "Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action."  Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583-84 (1st Cir. 1995).  Facts forming a common nucleus are those meeting the following criteria: "1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations."  Id. at 584.

---

[7]Appellants' only argument that there is insufficient identity of parties is that Herman was not a party to the Second Action because she was named only in her capacity as a trustee.  We have previously rejected this argument, however, making it clear that Herman was a party to the Second Action and thus subject to claim preclusion related to that action.  Indianapolis Life, 516 F.3d at 11.

-7-

An analysis of the above factors overwhelmingly suggests that Meiselman's cross-claims in the Second Action and the claims now raised by appellants are "rooted in the same nucleus of operative facts." Id. The factual basis for these counts was formed in the same time period and from the same essential dispute as the prior action: the employment relationship, the profit-sharing plan and the parties' differences over them, as well as the validity of the Release given by Meiselman in the First Action.

The two sets of claims form a convenient trial unit because the "witnesses or proof needed in the second action overlap substantially with those used in the first action." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998) (quoting Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 36 (1st Cir. 1996) (internal quotation marks omitted)). The facts and evidence necessary to appellants' complaint -- the employment contract, documentation of investment and other management decisions, and documentation of subsequent interactions between the parties -- are the same as those that would have been involved in the cross-claim.

Finally, the parties' expectations further point towards considering these two suits as a single cause of action. We consider whether appellants "knew all the facts necessary for bringing [their present claims]" at the time of Meiselman's cross-claim. Iannochino, 242 F.3d at 49. Because appellants' present

claims concern the souring of the employment relationship and related events, we conclude that appellants did, in fact, know these facts.[8]  In sum, appellants' claims are precluded by the resolution of the earlier suit and were properly dismissed by the district court.[9]

## III.

For the foregoing reasons, we **affirm** the district court's dismissal.

---

[8]We note that certain of appellants' claims arguably arose after Meiselman filed his cross-claims.  As appellants make no attempt to differentiate their claims based on their timing, however, we will not differentiate them now.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[9]To the extent appellants attempt to contest Meiselman's ability to collect on the default judgment, we note only that the judgment is final.  For the reasons discussed, this action is not the appropriate mechanism by which to mount what is essentially a collateral attack on that judgment.