# United States Court of Appeals
## For the First Circuit

No. 11-1747

ERIN HOOPER-HAAS ET AL.,

Plaintiffs, Appellees,

v.

ZIEGLER HOLDINGS, LLC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

D. Jeffrey Ireland and Faruki Ireland & Cox P.L.L. on brief
for appellant.
Gabriel I. Peñagarícano-Soler on brief for appellees.

August 10, 2012

**SELYA, <u>Circuit Judge</u>.** This is an appeal from the entry of a default and a subsequent judgment. After careful consideration, we conclude that the court acted within its discretion when it entered the default as a sanction for persistent noncompliance with court-ordered deadlines. We also conclude, however, that the court erred in granting relief beyond the scope of relief to which the plaintiffs were entitled. Consequently, we affirm in part, vacate in part, and remand for the entry of a revised judgment.

## I. BACKGROUND

This contretemps grows out of a failed real estate transaction. Early in 2008, defendant-appellant Ziegler Holdings, LLC, purchased the right to civil possession of a beachfront residence (the Property) in Vieques, Puerto Rico, from plaintiffs-appellees Erin Hooper-Haas, Larry Alex Haas, and Craig Howland-Hooper.[1] The precise details of the sale are largely irrelevant to this appeal; what is pertinent here is that the appellant agreed to make monthly payments over the course of four years, culminating in a final balloon payment; maintain insurance on the Property; and indemnify the appellees for attorneys' fees of $5,000 in the event of an enforcement action.

---

[1] Civil possession (posesión civil) is a type of property interest, which refers to the possessory interest an individual may hold where title in a parcel of real estate is vested in another (in this case the municipality of Vieques). P.R. Laws Ann. tit. 31, § 1421.

For a time, matters progressed apace. Then, in June of 2010, the appellant stopped making monthly payments, asserting that the appellees had misrepresented various aspects of the Property. The appellees responded by suing the appellant in a Puerto Rico court. In their complaint, they prayed for a declaration that the sale was void, the return of the possessory interest in the Property, and $5,000 in attorneys' fees. Invoking diversity jurisdiction, the appellant removed the case to the United States District Court for the District of Puerto Rico. See 28 U.S.C. §§ 1332(a)(1), 1441. The appellant then answered the complaint and counterclaimed for breach of contract.

The district court issued an initial scheduling order on September 20, 2010. See Fed. R. Civ. P. 16(b). The court directed the submission of pretrial memoranda by November 2 and scheduled a pretrial conference for November 9. The scheduling order required the parties, inter alia, to meet, confer, and exchange various discovery materials prior to the anticipated conference. The court warned that any failure to comply with the terms of the scheduling order would result in "stiff penalties, including but not limited to the entry of default."

The appellant paid no apparent heed to the court's admonition. It failed to submit its pretrial memorandum on or before November 2. Moreover, it frustrated the appellees' efforts to have the parties meet and confer regarding discovery prior to

-3-

the November 9 conference, and it did not disclose the materials specified in the court's order within the prescribed timeframe.

At the November 9 conference, the appellant's lawyers advised the court that they had been unable to reach their client for some time.[2] The court rebuked the appellant for missing the various deadlines and warned that it "will not tolerate . . . non-compliance" with its orders. Despite its displeasure, however, the court granted the appellant "a final opportunity to litigate," reset the deadline for filing the pretrial memorandum to December 8, and recessed the pretrial conference to December 15. The court explicitly warned that it would mete out sanctions for any failure to comply with this new timetable.

December 8 came and went without any sign of either the appellant's pretrial memorandum or its required disclosures. The December 15 conference was therefore aborted, and the appellees moved, inter alia, for the entry of default as a sanction. The appellant did not file an opposition to this motion.

On January 13, 2011, the district court granted the motion, struck the answer and counterclaim, and entered a default.

---

[2] Citing this inability, counsel had moved to withdraw on September 30. The court had denied the motion because the appellant had no other counsel of record, and limited liability companies, like corporations, cannot litigate pro se. See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-02 (1993); United States v. Hagerman, 545 F.3d 579, 581-82 (7th Cir. 2008); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 22 (1st Cir. 2000).

-4-

See Fed. R. Civ. P. 37(b)(2)(A)(vi), 54(a). The court specifically found the appellant's misconduct to be willful. Hooper-Haas v. Ziegler Holdings, LLC, No. 10-1712, 2011 WL 147904, at *4 (D.P.R. Jan. 13, 2011). It concluded that the appellant's repeated failures to respond to the discovery requests and to comply with the court's scheduling order were efforts "to unjustifiably delay the proceedings." Id.

Five days later, the appellant, represented by new counsel, sought reconsideration of the entry of default. The court summarily denied this motion.

In the ordinary course, a defaulted defendant is precluded from further contesting the factual averments in the complaint giving rise to liability, but such a defendant may nonetheless contest the relief sought. See Bonilla v. Trebol Motors Corp., 150 F.3d 77, 82 (1st Cir. 1998). On May 17, 2011, the district court convened an evidentiary hearing for the purpose of determining what relief was appropriate. The court allowed the appellant to be heard on the question of relief. Following the hearing, the court voided the sale and granted the appellees possession of the Property. See Hooper-Haas v. Ziegler Holdings, LLC, No. 10-1712, 2011 WL 2134377, at *5 (D.P.R. May 26, 2011). It also awarded damages consisting of the balance of the sale price ($110,546.05), accrued interest ($6,909.13), attorneys' fees ($5,000), and reimbursement for insurance premiums that the

appellant had failed to pay ($3,316).  <u>Id.</u>  This timely appeal ensued.

## II.  ANALYSIS

In this court, the appellant challenges both the entry of the default and the relief granted.  We bifurcate our discussion accordingly.

### A.  <u>Entry of Default</u>.

We review a district court's entry of a default sanction for abuse of discretion.  <u>Companion Health Servs., Inc.</u> v. <u>Kurtz</u>, 675 F.3d 75, 83 (1st Cir. 2012) (citing <u>Crispin-Taveras</u> v. <u>Mun'y of Carolina</u>, 647 F.3d 1, 7 (1st Cir. 2011)).  An abuse of discretion "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them."  <u>Indep. Oil & Chem. Workers of Quincy, Inc.</u> v. <u>Procter & Gamble Mfg. Co.</u>, 864 F.2d 927, 929 (1st Cir. 1988).  Within this rubric, we assay the district court's factual findings for clear error.  <u>Indigo Am., Inc.</u> v. <u>Big Impressions, LLC</u>, 597 F.3d 1, 3 (1st Cir. 2010).  Conclusions of law are appraised de novo, and a material error of law invariably constitutes an abuse of discretion.  <u>Jensen</u> v. <u>Phillips Screw Co.</u>, 546 F.3d 59, 64 (1st Cir. 2008).

We have said before, and today reaffirm, that a party who flouts a court order does so at its own peril.  <u>See</u>, <u>e.g.</u>, <u>Tower</u>

-6-

<u>Ventures, Inc.</u> v. <u>City of Westfield</u>, 296 F.3d 43, 45-46 (1st Cir. 2002). A court faced with a disobedient litigant has wide latitude to choose from among an armamentarium of available sanctions. <u>See</u> <u>Jones</u> v. <u>Winnepesaukee Realty</u>, 990 F.2d 1, 5 (1st Cir. 1993). The entry of a default is one of these sanctions. Default is strong medicine, <u>see</u> <u>Crispin-Taveras</u>, 647 F.3d at 7, and should be prescribed only in egregious cases, <u>see</u> <u>John's Insulation, Inc.</u> v. <u>L. Addison & Assocs., Inc.</u>, 156 F.3d 101, 109 (1st Cir. 1998).

Be that as it may, default may be a condign sanction when a court is confronted with a persistently noncompliant litigant. In an appropriate case, the availability of this sanction may well "play[] a constructive role in maintaining the orderly and efficient administration of justice." <u>Remexcel Managerial Consultants, Inc.</u> v. <u>Arlequín</u>, 583 F.3d 45, 51 (1st Cir. 2009) (internal quotation marks omitted) (quoting <u>KPS & Assocs., Inc.</u> v. <u>Designs by FMC, Inc.</u>, 318 F.3d 1, 13 (1st Cir. 2003)).

The appropriateness of a default sanction must be evaluated on a case by case basis. <u>See</u> <u>Young</u> v. <u>Gordon</u>, 330 F.3d 76, 81 (1st Cir. 2003). This evaluation implicates the totality of the circumstances. Relevant factors include, but are not limited to, the nature of the misconduct, its repetition (or lack thereof), its degree of deliberateness, the extent to which the offender had fair warning of the possible consequences of misconduct, the availability vel non of an opportunity to offer an explanation or

-7-

to plead for leniency, the legitimacy of any proffered excuse, any other aggravating or mitigating circumstances, the presence or absence of prejudice to the other party, the degree of interference with the functioning of the court, and the adequacy of lesser sanctions. See Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir. 2010); Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996). In the last analysis, these factors require a court to balance the desirability of resolving cases on the merits against the importance of "the orderly and efficient administration of justice." See Remexcel, 583 F.3d at 51 (internal quotation marks omitted) (quoting KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 13 (1st Cir. 2003)).

In the case at hand, the relevant factors predominate heavily in favor of the district court's action. The court repeatedly warned the parties that failure to comply with its scheduling orders would result in severe sanctions. It specifically mentioned default. The appellant ignored those warnings and persistently flouted deadlines set by the court. This "disobedience of court orders, in and of itself, constitutes extreme misconduct." Tower Ventures, 296 F.3d at 46. The egregiousness of the appellant's misconduct is underscored both by its repetitive nature and by the district court's supportable finding that the appellant had acted willfully in ignoring a series

of deadlines. See Global NAPs, Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 94 (1st Cir. 2010).

Here, moreover, the district court did not act impulsively or in haste. It provided a free pass for the appellant's original noncompliance but warned the appellant that further noncompliance would have dire consequences. The appellant did not learn any lesson from this second chance; it simply repeated its earlier misconduct and disregarded the new set of deadlines. Given the commission of these serial infractions in the face of pointed warnings and the absence of any compelling explanation for the appellant's recalcitrance, we think that it was reasonable for the district court to conclude — as it did — that the admittedly strong interest in deciding cases on the merits was overborne by the crushing weight of aggravating factors.

In an effort to blunt the force of this reasoning, the appellant musters a battalion of counter-arguments. None of these counter-arguments is persuasive.

To begin, the appellant contends that the default should be set aside because lesser sanctions were not tried. This contention is unavailing: where, as here, the sanction fits the misconduct, a trial court is not obliged to withhold the sanction until it has first slapped the offender on the wrist. See Companion Health, 675 F.3d at 84; cf. Damiani v. R.I. Hosp., 704 F.2d 12, 15 (1st Cir. 1983) (stating that "[t]here is nothing in

[Rule 37(b)] that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried"). In this instance, the sanction of default is proportionate to the egregious misconduct that provoked it.

The appellant's reliance on our decision in <u>Benitez-Garcia</u> v. <u>Gonzalez-Vega</u>, 468 F.3d 1 (1st Cir. 2006), is mislaid. In determining there that a sanction of dismissal with prejudice was overly harsh, we noted that the plaintiffs had received neither advance warning nor an opportunity to oppose the sanction and explain their noncompliance. <u>See</u> <u>id.</u> at 5-7. Here, however, the appellant was given two pointed warnings and had an opportunity (which it eschewed) to oppose the appellees' request for the entry of a default.

Next, the appellant insists that the missed deadlines were the unintentional byproduct of the breakdown in its relationship with its counsel. Once that breakdown occurred, the appellant says, it worked diligently to secure successor counsel and rectify the situation. But the district court, which had a bird's-eye view of the events as they played out, <u>see</u> <u>Young</u>, 330 F.3d at 82, rejected this explanation. The court warrantably found that, notwithstanding the asserted breakdown in communications, there was no good reason why the defendant could not have worked with its original counsel until a replacement was identified. At any rate, the passage of many months between the occurrence of the

-10-

breakdown and the date on which new counsel first appeared casts considerable doubt on the appellant's self-serving claim of diligence.[3]

We need not linger long over the appellant's plaint that default was inappropriate because its conduct in no way prejudiced the appellees.  "Repeated disobedience of a scheduling order is inherently prejudicial, because disruption of the court's schedule and the preparation of other parties nearly always results."  Robson, 81 F.3d at 4.  That black-letter principle fits this case like a glove.

The appellant's other counter-arguments are jejune, and we dismiss them out of hand.  We discern no abuse of discretion in the district court's decision to enter a default as a sanction for the appellant's flagrant disregard of court-imposed deadlines.

## B.  Relief.

The appellant's remaining assignment of error relates to the scope of the relief granted by the court below.  Its principal

---

[3] To be sure, at various times, the appellant's principal transmitted to the district court correspondence concerning its travails in retaining new counsel.  For two reasons, the district court was under no obligation to consider these submissions.  First, the appellant was represented by counsel at the time.  See, e.g., United States v. Tracy, 989 F.2d 1279, 1285 (1st Cir. 1993).  Second, a limited liability company cannot, as a matter of law, act pro se.  See supra note 2 (citing cases).

In any event, the court reviewed those communications and found them to be nothing more than empty excuses.  This finding was not clearly erroneous.

-11-

grievance is that the court erred when it fashioned an award that exceeded the relief sought in the complaint.

Until 2007, default judgments were governed by the then-current version of Rule 54(c), which stated in relevant part: "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c). In 2007, however, this language was revised to read: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Some courts have interpreted the revised language — the change from "demand for judgment" to "pleadings" — as broadening what may be considered in the context of a default judgment. See, e.g., WMS Gaming Inc. v. WPC Prods. Ltd., 542 F.3d 601, 606 (7th Cir. 2008) (considering the relief sought in plaintiff's complaint and motion for entry of default judgment); PT (Persero) Merpati Nusantara Airlines v. Thirdstone Aircraft Leasing Grp., Inc., 246 F.R.D. 17, 18-19 (D.D.C. 2007) (referencing relief sought in plaintiff's default judgment memorandum). There is, however, some reason to question this view. See Fed. R. Civ. P. 54(c) advisory committee's note (2007 amendments) ("The language of Rule 54 has been amended as part of the general restyling of the Civil Rules . . . . These changes are intended to be stylistic only.").

The upshot is that, in the context of a default judgment, the familiar tenet that a party should be given the relief to which

-12-

it is entitled whether or not it has prayed for that relief in its pleadings, see, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 130 (1983), does not obtain. This construct makes perfect sense: after all, a defendant may reasonably decide, based upon its evaluation of the relief sought, that defending an action is not worth the effort.[4] 10 Charles A. Wright et al., Federal Practice and Procedure § 2663, at 166-67 (3d ed. 1998). It would be manifestly unfair if the court were then to award relief not previously specified — relief that, perforce, could not have been included in the defendant's decisional calculus. Id. It follows that a default does not expose a defendant to impositions not properly identified before the entry of default. See, e.g., Blanchard v. Cortés-Molina, 453 F.3d 40, 45 (1st Cir. 2006).

In this case, the complaint contains only the following prayer for relief:[5]

---

[4] In this case, the appellant appeared and answered the complaint before the motion for entry of default was filed. Be that as it may, "Rule 54(c) does not differentiate between a default based on a total failure of defendant to appear and a default following an appearance." 10 Charles A. Wright et al., Federal Practice and Procedure § 2663, at 171 (3d ed. 1998).

[5] The plaintiffs commenced this action in a Puerto Rico court and, therefore, the complaint was originally filed in that court. Puerto Rico courts operate under Rules of Civil Procedure analogous to the Federal Rules of Civil Procedure. See P.R. Laws Ann. tit. 32, App. III, Rules 1-73. In particular, the Puerto Rico Rules of Civil Procedure provide that, in connection with a default judgment, "a judgment by default shall not be different in kind nor exceed the amount prayed for in the demand for judgment." P.R. Laws Ann. tit. 32, App. III, Rule 43.6.

> [T]he [appellees] respectfully request[] that
> the honorable court declare overdue the
> obligation due to the [appellant's] failure to
> comply with its terms and, therefore, decree
> null and void the public deed [to the
> Property], thus reverting to the [appellees]
> civil possession of the property to which it
> refers, imposing also payment of $5,000.00 for
> attorney fees.

There is no mention, for example, of either damages for breach of contract or reimbursement for unpaid insurance premiums. The appellees' subsequent motion for the entry of a default judgment explicitly states that "[t]he terms of relief requested in the default judgment are set forth in the . . . complaint," and that "no monetary damages are requested."

This explicit limitation makes it unnecessary for us to decide in this case whether or to what extent the 2007 amendment to Rule 54(c), see text supra, enlarges the scope of the pleadings to which a court fashioning a default judgment may refer. We therefore leave that question open.

In the default judgment entered below, the district court not only ordered the return of possession of the Property and the payment of attorneys' fees but also ordered relief not sought in the complaint. This additional relief included damages equal to the balance of the purchase price, accrued interest, and reimbursement for unpaid insurance premiums. Because these damages strayed beyond the relief that the appellees had limned in their complaint and their motion for the entry of a default judgment,

-14-

they were improper.  The obvious remedy for this infirmity is for the district court to strike the offending items from the compendium of relief granted.

The appellant opposes this remedy.  It asseverates that the post-default hearing held by the court violated principles of due process and, therefore, the entire judgment must be vacated.  This asseveration lacks force.

The appellant is correct that even a party in default is generally entitled to contest damages and to participate in a damages hearing (if one is necessary).  See Bonilla, 150 F.3d at 82.  Here, however, the court afforded the appellant that very opportunity.  Moreover, the appellant availed itself of the opportunity: it presented its position on damages to the district court and its counsel engaged in extensive cross-examination of the witnesses proffered by the appellees.  The short of it is that the appellant received all of the process that was due.

The appellant's contrary argument confuses liability with damages.  At the hearing, it proffered a witness to testify about liability, but the district court refused to allow the testimony.  This ruling was unimpugnable.  The law is pellucid that once the default is entered, so long as the complaint states a claim for relief, then the defaulted party has no further right to contest liability.  See id. at 80; 10A Wright et al., supra § 2688, at 57-68 (collecting cases).

-15-

Before us, the appellant attempts to sabotage this ruling by suggesting that its witness was going to testify as to damages. But that was not the position that the appellant took below. The district court plainly understood that the witness was being offered to testify about liability — and the appellant never said otherwise. Absent extraordinary circumstances (not present here), the appellant cannot mount an argument in this court that it neglected to raise in the court below. Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987).

In light of the foregoing, we reject the appellant's due process claim and hold that the district court, on remand, may base a revised award on the evidence adduced at the post-default hearing. We therefore remand for the entry of a revised judgment limited to declaratory relief, possession of the Property, and attorneys' fees.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we affirm the entry of default, vacate the judgment below, and remand for the entry of a revised judgment consistent with this opinion.

**Affirmed in part, vacated in part, and remanded. Costs are to be taxed in favor of the appellees.**